ORIGINAL FILED

FEB -4 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

Sandra O'Hara- Harmon
Plaintiff

CV19   601

C. A. No.:_____

VS.

Facebook, Inc. – Social Media
Facebook Shop, Inc- Internet Services

KAW

## NOTICE OF COMPLAINT

JURY TRIAL REQUESTED



Sandra O'Hara-Harmon, Pro se. Plaintiff hereby files this <u>NOTICE OF COMPLAINT</u> and in support avers as follows:

### JURISDICTION

1. This court has subject matter jurisdiction pursuant to Article Ill and USC 28;1332 Diversity of Jurisdiction.
2. Plaintiff, in this action reside in the State of South Carolina, and the Defendants corporate residence is in the state of California. (see corporate papers attached as plaintiff exhibit number one (1).

### PARTIES

1. Sandra O'Hara- Harmon, Plaintiff, and adult whose mailing address is 815 F Street, Hartsville, SC 29550
2. Corporation Service Company which will do Business in California As CSC- Lawyers Incorporating Service, Agent for Facebook, Inc. whose address is 1601 Willow Road, Menlo Park, CA 94025. (Statement of Information- State of California – Exhibit No. 9)

### CLAIM

1. Facebook actions of locking me, thus banning me out of my Facebook account was undertaken in bad faith, and violates Facebook's contractual obligations to plaintiff as a user.
2. That Facebook preventing me from having access to my Facebook business/ community page was undertaken in bad faith, and violates Facebook's contractual obligations to plaintiff as a user.
3. That Facebook censoring of my boosted Facebook ad was undertaken in bad faith, and violates Facebook's contractual obligations.

1 of 7

4. Facebook employee Gulberg Hendrick from its technical support headquarters with the telephone number 1-833-272-0777, is engaging in extortion.

## FACT SUPPORTING CLAIM

1. On or about the 12th of January 2019, Plaintiff, boosted a posting from her Facebook community page. (Email) Sohara1966@aol.com  (Community Page: Advocates for Equal Justice.)
2. A boosted post is a post to your Page's timeline that you can apply money to in order to boost it to an audience of your choosing. This is the simplest way to advertise on Facebook.
3. When you boost a post, you'll tell Facebook 3 things:
    a. Who you want to reach: you'll pick a target audience of the type of people you want to connect with
    b. Your max budget: you'll tell Facebook exactly how much you want to spend over the course of your entire campaign
    c. How long you want to run your ad: once you click Boost and your ad is approved, people in your target audience will see your ad in their News Feed for the duration you've set
4. In this case, I plaintiff boosted a post that I shared that consisted of my now deceased transgender son treatment and experience in a local North Carolina Hospital.
5. My ad was initially approved on January 13, 2019 at 12:19am.  With the email Noting: Your ad is approved and should begin delivering shortly.  See Plaintiff Exhibit No. 1
6. However, the problem was Facebook never started circulating that ad in accordance to their policy on boosting.
7. Therefore, I notified Facebook via their help- support page that my newest approved boosted ad, has yet to be put into circulation.
8. I received help through their support team that informed me to reset my ads manager, and try reposting.
9. I reposted several times receiving additional approvals on Jan 13, 2019 at 1:05pm; Jan. 13, 2019 @ 11:05 pm; Jan. 14, 2019 @ 1:19am; Jan. 15 @ 8:33pm; Jan. 16 @ 12:01am; Jan. 16 @ 3:44pm; and Jan. 17, 2019 @ 1:05am. Still my ad was not circulating – which was the reason for the multiple postings.  (See Plaintiff Exhibit #2 Emails of approval dates)
10. I contacted Facebook help & support page to no avail.
11. On Jan. 17, 2019 at 8:33pm, I received an email notifying me that, see copy & paste from email:   (Plaintiff Exhibit No. 3)

It looks like someone may have accessed your Facebook account. To secure your account, you'll need to answer a few questions and change your password the next time you go to Facebook.

For your protection, no one can see you on Facebook until you secure your account.

2 of 7

Thanks,
The Facebook Security Team

12. After receiving this email, I attempted unsuccessfully to secure my account by verifying my identity.
13. I repeatedly correctly verified my identity numerous times only to be given the same code which notes that it is expired 447256, and getting the following message repeatedly:
   "In order to keep your information secure, we've locked your account. Before we can unlock it, please verify your identity and change your password.
   Your account will remain hidden until you complete this process.
   (Plaintiff Exhibit No. 4- multiple recovery codes Pages 1-42 w/ additional 35B & 39B totally 44 pages)

14. Currently, I am blocked by Facebook from accessing my personal and business Facebook account. This conduct by agents of Facebook, on behalf of Facebook. Inc is clearly not reflective of fair dealing, and it's undertaken in bad faith, as well as violative of Facebook's contractual obligations to its users.

15. After multiple complaints via the help- support page, I received an email from Babulal Sarkar. Copy/ Paste from email: (Plaintiff Exhibit No.5 consist of 3 pages

Respected Madam,
I have gone through your complain against Facebook.
Ridiculously, I am facing the same problem in Facebook. 2 days back suddenly I found no Facebook account of mine at social media. Unable to log in. I am from India.
May I know from you how you did able to solve your problem ?
May I expect guidelines from you , how you have solved the problem ?
I really need your help to overcome.
Thanks & Regards
Babulal Sarkar

16. Plaintiff later learned from researching the name of Babulal Sarkar, that he is listed as a Facebook Manager on his Facebook Post.
A copy of his post (see Plaintiff Exhibit No. 6)

- আমি নই কবি, নই সাহিত্যিক, নইতো কোনও লেখক-জ্ঞানহীন, বোধহীন মুর্খ এক পাঠক।
- Manager at Facebook
- Went to Bagan Bazer H.S School
- Lives in Khowai
- From Khowai

17. At this point of discovery, it appears as if Babulal Sarkar was being sarcastic, and may have censored my post, and intentionally locked and banned me from having access to my Facebook account because I stated, "…It's rumored that in India, transgender

individuals are treated harshly, so I assume this doctor from India believed my daughter's life was not worth saving, which is why he did nothing to aid in preserving it…."

18. He is a Facebook Manager in the technology department but he has the audacity to be making a mockery of him locking me out of Facebook, engaging in sarcastic behavior, displaying total insensitivity towards Plaintiff as a Facebook user. Clearly his conduct is in bad faith.
19. The conduct taken by Facebook has interfered with the two ads that I had running, because they abruptly stopped circulating them, as they are noted as being inactive since mid- December 2018, conduct that I was unaware of, despite being scheduled to run for several months beyond approximately March or June 2019. (Plaintiff Exhibit 7 inactive posts statuses/ Ad approvals/ Bank drafts- consists of 12 pages)
20. Facebook, Inc agreement listed in its Statement of Rights and Responsibilities is to provide users access to Facebook's services subject to certain terms and conditions. While users do not pay for the services directly, Facebook benefits from user activity through the sale of advertising. (Plaintiff Exhibit 8- Facebook terms of service; Rights & Responsibilities)
21. Facebook expressly reserves the right to terminate the accounts of users who violate Facebook terms of service; Rights & Responsibilities.
22. However, Facebook does not expressly reserve the right to terminate an account for any reason, and indicates in its Statement of Principles that users "should not have their presence on the Facebook Service removed for reasons other than those described in Facebook's terms of service, Statement of Rights and Responsibilities."
23. Every contract (under California law and under the laws of most other states) has an implied duty of good faith and fair dealing, which means that there is an implied "covenant by each party not to do anything which will deprive the other parties . . . of the benefits of the contract."
24. The termination provision of Facebook's Statement of Rights and Responsibilities provides that when a user account is terminated, Facebook "will notify you by email or at the next time you attempt to access your account." . Given the express language, Facebook could not have an implied obligation to provide a different termination process.
25. Facebook termination/ ban / lock-out without warning nor just cause, not only prevented access to Plaintiff Facebook account, it prevents Plaintiff from being able to download and secure the data I have saved on Facebook for the duration of years of using said services, as well as cause plaintiff mental anguish & emotional distress, and violate their clearly expressed policy on terminations, and Facebook terms of service; Rights & Responsibilities.
26. Plaintiff decided to involve the courts when attempts at resolving the issue with Facebook, was fruitless, as Facebook employee from its technical support headquarters with the telephone number 1-833-272-0777, who stated his name was Gulberg Hendrick, informed me, Plaintiff to go to Walmart and get one google play card for $100, and to call back on the number to give the code to him. He noted, I would need the code to unblock my Facebook. He said that Facebook would refund me the money.
27. This conduct appeared to be fraudulent, and Facebook help- support pages were not helpful in obtaining a solution, therefore, I am forced to rely on the courts in this case.
28. By definition, an implied duty or covenant imposes obligations and provides for certain rights which are not expressly set out in a contract. In California, courts interpret

28. most contracts in such a manner as to impose a duty of good faith and fair dealing on both parties.
29. Good faith (law) In contract law, the implied covenant of good faith and fair dealing is a general presumption that the parties to a contract will deal with each other honestly, fairly, and in good faith, so as to not destroy the right of the other party or parties to receive the benefits of the contract.
30. In this case, there existed no good faith, nor fair dealing.
31. Plaintiff posts did not violate Facebook's terms nor policy for its users, so there was no reason to ban, lock, nor terminate Plaintiff from having access to both her personal and business Facebook accounts.
32. Plaintiff verified her business account via US Mail, providing Facebook with her Identification card, as well as Facebook sending mail to Plaintiff address to verify that Plaintiff had a residence here in the United States.
33. Plaintiff's boosted ads were approved by Facebook.
34. Defendant employee took offense to the boosted ads, and acted in bad faith by using his position as a Facebook Manager to censor my ads, infringe on my right to free speech, by preventing the circulation of my new ad, and deactivating my ads that were supposed to be active, by stopping their circulation mid-December, yet allowing my ads to be listed in ads manager as active, while at the same time charging me for ads that were not being circulated.  As the ads noted active, but were not in circulation as paid for by the terms of the circulation -payment agreement with respect to audiences reached on a daily basis by Facebook. I am blocked/ banned/and  denied access to/ from using and having access to both my personal account and my business page.  Using his position to prevent me from having access to my Facebook accounts, along with Babulal Sarkar then being intentionally sarcastic via his email to my email account as previously noted, coupled with the extortion attempt with the Google Play Card required for  unblocking at a cost of $100, are reflective of bad faith, and unfair dealings.
35. Facebook does have to follow the rules it sets out in its terms of service. A website's policies and Terms of Service are generally considered a contract between the user and the website owners. So, while a company may be able to institute whatever policies they want, they generally have to adhere to what they have written in the Terms of Service.

*NOTE: Facebook allows its users to create a community page:* Community Pages are a new type of Facebook Page dedicated to a topic or experience that is owned collectively by the community connected to it. Community Pages let you connect with others who share similar interests and experiences.

Plaintiff contend that:

1. It's every individual citizen's right to refuse to disseminate content that is considered, by them, to be inappropriate. So, Facebook, as a private entity, have the right to create a policy that censors content that its members post online along with the traditional censored speech such as cyberbullying and harassment, direct threats, and threats of sexual violence or exploitation.
2. Facebook policy states that "…If we determine that you have violated our terms or policies, we may take action against your account to protect our community and services,

including by suspending access to your account or disabling it. We may also suspend or disable your account if you create risk or legal exposure for us or when we are permitted or required to do so by law. Where appropriate, we will notify you about your account the next time you try to access it…"

3. However, capricious terminations by Facebook violate an implied covenant of good faith and fair dealing
4. As the court in Young's case noted, "It is at least conceivable that arbitrary or bad faith termination of user accounts, or even termination of user accounts with no explanation at all, implicates the implied covenant of good faith and fair dealing." Young vs. Face Book, Inc. Case Number 5:10-cv-03579
5. Plaintiff, should at least be notified and afforded some meaningful opportunity to be heard before being prohibited from participating on Facebook as a user with the email of sohara1966@aol.com and the Community Page: Advocates for Equal Justice, especially when there is no evidence of any wrong doings, nor know evidence that any provisions and/ or terms of services as listed in Facebook terms of service; Rights & Responsibilities were violated by the Plaintiff in this action.

WHEREFORE Plaintiff request the following relief:
1. Order for defendants to immediately restore Plaintiff Facebook Account both personal and community page, along with plaintiff posted ads that were approved, adding time that was taking away from the circulation of the approved ads. Email: Sohara1966@aol.com; Community Page: Advocates for Equal Justice; Facebook Name: Sandra O'Hara-Harmon.
2. Prohibit the defendants from locking out/ banning Plaintiff in violation of Facebook's terms of service; Rights & Responsibilities ensuring that Facebook adhere to the State of California's contract provisions with respect to their covenant of good faith & fair dealing as required in their contract law.
3. Award Plaintiff $500,000.00 for the conduct complained about in this complaint.
4. Award Plaintiff court cost and attorney fees in the event that Plaintiff is able to locate an attorney that would be willing to take on her case, as Plaintiff is a State Certified School Teacher, not a trained lawyer---seeking to address this grievance.

Respectfully submitted,

Dated: January 31, 2019.

*Sandra O'Hara-Harmon*
Sandra. O'Hara- Harmon



IN THE UNITED STATES DISTRICT COURT
FOR SOUTH CAROLINA- FLORENCE

Sandra O'Hara- Harmon
Plaintiff

C. A. No.:_____

VS.

Facebook, Inc. – Social Media
Facebook Shop, Inc- Internet Services

## CERTIFICATE OF SERVICE

Sandra O'Hara- Harmon ProSe certify that a true and correct copy of the Notice of Complaint along with two copies of the Waiver of Summons were sent certified US Mail Return receipt to the following on the date stated below to:

Corporation Service Company which will do Business in California As CSC- Lawyers Incorporating Service, Agent for Facebook, Inc. whose address is 1601 Willow Road, Menlo Park, CA 94025.

Respectfully submitted,
___Sandra O'Hara-Harmon___
Sandra O'Hara-Harmon

Dated: January 31, 2019