1  KEKER, VAN NEST & PETERS LLP
   MATAN SHACHAM - # 262348
2  mshacham@keker.com
   KRISTIN E. HUCEK - # 321853
3  khucek@keker.com
   633 Battery Street
4  San Francisco, CA 94111-1809
   Telephone:  415 391 5400
5  Facsimile:   415 397 7188

6  Attorneys for Defendant
   FACEBOOK, INC.

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         SAN FRANCISCO DIVISION

11 SANDRA O'HARA-HARMON,                  Case No. 3:19-cv-00601-WHA

12         Plaintiff,                     **DEFENDANT FACEBOOK, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS UNDER FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

13     v.

14 FACEBOOK, INC.,

15         Defendant.
                                          Date:   May 9, 2019
16                                        Time:   8:00 a.m.
                                          Dept.:  Courtroom 12, 19th Floor
17
                                          Judge:  Honorable William H. Alsup
18
                                          Date Filed:  February 4, 2019
19
                                          Trial Date:  Not Set
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS .................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ..............................................................2

I. INTRODUCTION ...................................................................................................2

II. FACTUAL BACKGROUND..................................................................................2

III. LEGAL STANDARD..............................................................................................4

IV. ARGUMENT ...........................................................................................................5

    A. Plaintiff's Claim Is Barred By Section 230(c)(1) Of The CDA. ...............5

        1. Facebook is an interactive computer service provider.................6

        2. The content at issue was provided by someone other than Facebook. ........6

        3. Plaintiff's claims seek to hold Facebook liable for exercise of a publisher's traditional editorial functions. ....................................7

    B. Plaintiff Fails To Adequately Allege A Claim. ........................................8

V. CONCLUSION.......................................................................................................12

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................4

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ................................................................................................2, 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................................4

*Berger v. Home Depot U.S.A., Inc.*,
  476 F. Supp. 2d 1174 (C.D. Cal. 2007) ....................................................................................9

*Brown v. Gilmore*,
  278 F.3d 362 (4th Cir. 2002) ....................................................................................................5

*Caraccioli v. Facebook, Inc.*,
  167 F. Supp. 3d 1056 (N.D. Cal. 2016) ....................................................................................6

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) ..................................................................................................5

*Chicago Lawyers' Comm. For Civil Rights Under Law, Inc. v. Craigslist, Inc.*,
  519 F. 3d 666 (7th Cir. 2008) ...................................................................................................7

*Coto Settlement v. Eisenberg*,
  593 F.3d 1031 (9th Cir. 2010) ..................................................................................................4

*In re Facebook PPC Advert. Litig.*,
  709 F. Supp. 2d 762 (N.D. Cal. 2010) ......................................................................................9

*In re Gilead Scis. Secs. Litig.*,
  536 F.3d 1049 (9th Cir. 2008) ..................................................................................................4

*Herrick v. Grindr, LLC*,
  306 F. Supp. 3d 579 (S.D.N.Y. 2018).......................................................................................6

*Herskowitz v. Apple, Inc.*,
  940 F. Supp. 2d 1131 (N.D. Cal. 2013) ....................................................................................8

*Igbonwa v. Facebook, Inc.*,
  2018 WL 4907632 (N.D. Cal. Oct. 9, 2018).............................................................................6

*Jefferson v. Zuckerberg*,
  2018 WL 3241343 (D. Md. July 3, 2018).................................................................................6

*Jones v. Bock*,
    549 U.S. 199 (2007) .................................................................................................................4

*Klayman v. Zuckerberg*,
    753 F.3d 1354 (D.C. Cir. 2014) ................................................................................................6

*Lancaster v. Alphabet Inc.*,
    2016 WL 3648608 (N.D. Cal. July 8, 2016) .....................................................................5, 7, 8

*Levitt v. Yelp! Inc.*,
    2011 WL 5079526 (N.D. Cal. Oct. 26, 2011) ...........................................................................5

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
    591 F.3d 250 (4th Cir. 2009) .....................................................................................................5

*Paulsen v. CNF Inc.*,
    559 F.3d 1061 (9th Cir. 2009) ...................................................................................................4

*Pennie v. Twitter, Inc.*,
    281 F. Supp. 3d 874 (N.D. Cal. 2017) .......................................................................................6

*Perfect 10, Inc. v. CCBill LLC*,
    488 F.3d 1102 (9th Cir. 2007) ...................................................................................................5

*Riggs v. MySpace, Inc.*,
    444 F. App'x 986 (9th Cir. 2011) ..................................................................................5, 7, 8

*Schulken v. Wash. Mut. Bank*,
    2009 WL 4173525 (N.D. Cal. Nov. 19, 2009) ..........................................................................8

*Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ...........................................................................5, 6, 7, 8

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) .................................................................8, 9, 10, 11

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) .....................................................................................................7

**State Cases**

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
    222 Cal. App. 3d 1371 (1990) ...................................................................................................9

*Cross v. Facebook, Inc.*,
    14 Cal. App. 5th 190, 206 (2017) ..............................................................................................6

**Federal Statutes**

47 U.S.C. § 230 ................................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 8 ................................................................................................................................4

Fed. R. Civ. P. 12 ..............................................................................................................................1

# NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 9, 2019, at 8:00 a.m., or as soon thereafter as this matter may be heard before the Honorable William H. Alsup, United States District Court, San Francisco Division, 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant Facebook, Inc. will and hereby does move this Court under Federal Rule of Civil Procedure 12(b)(6) to dismiss with prejudice the claims filed against it by Plaintiff Sandra O'Hara-Harmon on the ground that Plaintiff fails to state a claim upon which relief can be granted.

This motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support thereof, the Proposed Order filed concurrently herewith, all pleadings and papers on file in this action, the arguments of counsel, and upon such further oral and written argument and evidence as may be presented at or prior to the hearing on this motion.

Dated: April 1, 2019                                KEKER, VAN NEST & PETERS LLP

                                        By:   */s/ Kristin E. Hucek*
                                              MATAN SHACHAM
                                              KRISTIN E. HUCEK

                                              Attorneys for Defendant
                                              FACEBOOK, INC.

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.    **INTRODUCTION**

Plaintiff Sandra O'Hara-Harmon believed that an ad she posted on Facebook was not circulating properly, so she reposted the ad seven times in four days. As a result, she received an email from Facebook informing her that it looked like someone was trying to improperly access her account, so the account would be locked for her protection until she could secure the account. She then tried and failed to properly secure her account. Based on these allegations, Plaintiff seeks to bring a claim against Facebook, Inc. for breach of the implied covenant of good faith and fair dealing.

Plaintiff's claim fails for two, independent reasons. First, it is barred by Section 230(c)(1) of the Communications Decency Act ("CDA"). 47 U.S.C. § 230(c)(1). That statute immunizes internet platforms like Facebook from claims that are based on actions such as "reviewing, editing, and deciding whether to publish or to withdraw from publication third-party content." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009). Second, Plaintiff fails to adequately allege any breach of the implied covenant of good faith and fair dealing.

For these reasons, and as further detailed below, the Court should dismiss Plaintiff's Complaint.

II.    **FACTUAL BACKGROUND**

Facebook operates one of the world's leading social media services. Over two billion people worldwide use Facebook to create personal profiles, build community, and share content.

Plaintiff maintains both "personal" and "business/community" Facebook pages. Compl. at 3, ¶ 14. On January 12, 2019, Plaintiff attempted to "boost" a post she made to her community page, Advocates for Equal Justice. *Id*. at 2, ¶ 1. Facebook's "Boost Post" function allows users to create an ad out of a post. Plaintiff received an email from Facebook on January 13, 2019, at 12:19 a.m., alerting her that her ad had been approved. *Id*. at 2, ¶ 5. Despite receiving this email, Plaintiff claims that her ad never started circulating. *Id*. at 2, ¶ 6. In order to understand what was happening with her ad, Plaintiff claims to have contacted Facebook's support team, who allegedly informed her that she should reset her ad manager and try reposting her ad. *Id*. at 2, ¶¶

1  7-8.  Plaintiff subsequently reposted her ad seven times over the course of four days.  *Id.* at 2, ¶ 9.
2  She received the same email each time she reposted her ad, notifying her that her ad had been
3  approved and would be delivering shortly.  *See* Pl. Exh. 2.  She alleges that despite the multiple
4  postings, her ad was not circulating.  *Id.* at 2, ¶ 9.

5        On January 17, 2019, after reposting her ad for the seventh time, Plaintiff alleges that she
6  got an email from Facebook notifying her that it appeared as though someone may have accessed
7  her Facebook account and that, for her protection, her account was going to be hidden from view
8  until she secured her account by answering a few security questions and changing her password.
9  *Id.* at 2, ¶ 11.  Plaintiff states that she tried to secure her account by "verifying her identity," but
10 was unsuccessful.  *Id.* at 3, ¶ 12.  According to Plaintiff, after each unsuccessful attempt, she
11 received the same email indicating that for security reasons, her account was "locked" and could
12 only be unlocked after she verified her identity and changed her password.  *Id.* at 3, ¶ 13.

13       Plaintiff then claims to have made multiple complaints via Facebook's "help-support
14 page."  *Id.* at 3, ¶ 15.  In response to her complaints, Plaintiff alleges that she received an email
15 from a man named Babulal Sarkar living in Khowai, India, who claimed to have been
16 experiencing the same problem as Plaintiff and asked for advice on how to solve the problem.  *Id.*
17 at 3, ¶ 15.  After receiving this email, Plaintiff located what she believed was this individual's
18 Facebook page, on which he lists that he is a "Manager at Facebook."  *Id.* at 3, ¶ 16.  Upon
19 making this discovery, Plaintiff concluded that Mr. Sarkar was being sarcastic in his email to her
20 and had personally "intentionally locked and banned" her from accessing her Facebook account.
21 *Id.* at 3, ¶ 17.  Plaintiff also attempted to address her problem by calling a person named Gulberg
22 Hendrick, whom she believed to be associated with Facebook's technical support headquarters.
23 *Id.* at 4, ¶ 26.  The man she spoke with allegedly informed Plaintiff that she needed to go to
24 Walmart to buy a $100 Google Play card and provide him with the code on the card before he

could "unblock" her account. *Id.* at 4, ¶ 26.[1]

In response to these "fruitless" attempts to "resolv[e] the issue with Facebook," Plaintiff filed this lawsuit. *Id.* at 4, ¶¶ 26-27. She appears to allege a single claim, for breach of the covenant of good faith and fair dealing, based on Facebook's "locking" her out of her account and ceasing to circulate her boosted ads. Compl. at 1; *id.* at 3, ¶¶ 12, 14; *id.* at 4, ¶ 19.

### III.   LEGAL STANDARD

"A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549, U.S. 199, 215 (2007). That is true both when a Complaint fails to adequately allege the necessary elements of a claim and when "an affirmative defense . . . appears on its face." *Id.* (quoting *Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (internal quotation mark omitted) (omission in original).

Fed. R. Civ. P. 8(a) requires plaintiff to plead her claim with sufficient specificity as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). The complaint must allege facts sufficient to "state a claim to relief that is plausible on its face." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (citing *Twombly*, 550 U.S. at 570). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679.

In evaluating a Complaint, the court is not required "to accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1071 (9th Cir. 2009); *see also In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (noting that courts do not "accept as true allegations that are merely

---

[1] Plaintiff asserts that the purported Mr. Hendrick is "engaging in extortion," but she does not name this individual as a defendant, nor does she allege any factual basis for her belief that this person was in any way affiliated with Facebook (he was not). It appears, unfortunately, that this individual, whoever he is, was trying to ensnare Plaintiff in a well-known tech support scam. *See* Federal Trade Commission, *Scammers increasingly demand payment by gift card*, Oct. 16, 2018, available at: https://www.ftc.gov/news-events/blogs/data-spotlight/2018/10/scammers-increasingly-demand-payment-gift-card. Plaintiff does not and cannot assert any claim of extortion against Facebook.

conclusory, unwarranted deductions of fact, or unreasonable inferences").

## IV. ARGUMENT

### A. Plaintiff's Claim Is Barred By Section 230(c)(1) Of The CDA.

Plaintiff's claim fails at the outset, and should be dismissed, because it is barred by Section 230(c)(1) of the CDA. 47 U.S.C. § 230(c)(1). The Complaint seeks to hold Facebook liable for decisions about what it can host on its platform, and Section 230(c)(1) prohibits such claims.

Congress enacted the CDA to promote the development of a free and vibrant internet by shielding providers of interactive computer services from lawsuits arising out of user-generated content. *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1122 (9th Cir. 2003). In order to further the Act's fundamental policy goals, courts have "treated § 230(c) immunity as quite robust." *Id.* at 1123; *see also Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007) (CDA provides "broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service.").

CDA immunity, "like other forms of immunity, is generally accorded effect at the first logical point in the litigation process," because "immunity is an *immunity from suit* rather than a mere defense to liability." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (quoting *Brown v. Gilmore*, 278 F.3d 362, 366 n.2 (4th Cir. 2002)) (internal quotation marks omitted) (emphasis in original). Accordingly, courts routinely dismiss claims at the pleading stage based on Section 230(c)(1). *See, e.g.*, *Perfect 10*, 488 F.3d at 1121; *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015); *Lancaster v. Alphabet Inc.*, 2016 WL 3648608, at * 2-3 (N.D. Cal. July 8, 2016); *Levitt v. Yelp! Inc.*, 2011 WL 5079526, at *8-9 (N.D. Cal. Oct. 26, 2011).

Under Section 230(c)(1) of the CDA, "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). Accordingly, Facebook is entitled to immunity if: (1) it is a "provider . . . of an interactive computer service;" (2) the allegedly

offending content was "provided by another information content provider;" and (3) Plaintiff's claims treat Facebook as the "publisher" of that content. *Id.* The Complaint reveals that all three requirements for Section 230(c)(1) immunity are met.

### 1. Facebook is an interactive computer service provider.

Facebook qualifies as a "provider" of an "interactive computer service." *Id.* The CDA broadly defines "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." *Id.* at § 230(f)(2). "Courts applying this definition have had no trouble concluding that social networking sites like Facebook.com . . . are 'interactive computer services.'" *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 588 (S.D.N.Y. 2018). In fact, every court to consider whether Facebook meets this definition has rightly concluded it does. *See, e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014); *Igbonwa v. Facebook, Inc.*, 2018 WL 4907632, at *5 (N.D. Cal. Oct. 9, 2018); *Pennie v. Twitter, Inc.*, 281 F. Supp. 3d 874, 888 (N.D. Cal. 2017); *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1065 (N.D. Cal. 2016); *Sikhs for Justice*, 144 F. Supp. 3d at 1093; *Cross v. Facebook, Inc.*, 14 Cal. App. 5th 190, 206 (2017).

### 2. The content at issue was provided by someone other than Facebook.

In order to satisfy Section 230(c)(1)'s second requirement, the content at issue must come from an "information content provider" other than Facebook. The term "information content provider" is broadly defined as "any person or entity that is responsible, in whole or in part, for the creation or development" of the content at issue. 47 U.S.C. § 230(f)(3). Facebook's users, including Plaintiff, fit this definition, as numerous courts have held. *See, e.g.*, *Klayman*, 753 F.3d at 1358-59; *Sikhs for Justice*, 144 F. Supp. 3d at 1093–94; *Igbonwa*, 2018 WL 4907632, at *6; *see also Jefferson v. Zuckerberg*, 2018 WL 3241343, at *5 (D. Md. July 3, 2018) (requirement met where "nothing in the Complaint suggests that Facebook was itself 'responsible' for the 'creation' or 'development' of any content").

Here, Plaintiff does not allege that Facebook had any role in creating the content of her ads or any other content. The content at issue was created by someone other than Facebook—*i.e.*, by Plaintiff herself—so the second requirement for Section 230(c)(1) immunity is met.

### 3. Plaintiff's claims seek to hold Facebook liable for exercise of a publisher's traditional editorial functions.

The third requirement for Section 230(c)(1) immunity is met if "the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content provided by another." *Barnes*, 570 F.3d at 1102. Section 230(c)(1) bars lawsuits seeking to hold a service provider liable "for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997). The name of the cause of action is not what matters for this inquiry. *See Barnes*, 570 F.3d at 1101-02. If "the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker,'" then "[S]ection 230(c)(1) precludes liability." *Id.* at 1102.

Thus, courts have dismissed claims based on removing or refusing to publish a plaintiff's content, or even removing a plaintiff's posts or a plaintiff's account, styled in a wide variety of ways, including ones styled as breach of the covenant of good faith and fair dealing, as here. *Lancaster*, 2016 WL 3648608, at *2-3, 5 (dismissing claims for, among other things, breach of the covenant of good faith and fair dealing based on removal of plaintiff's videos); *Sikhs for Justice*, 144 F. Supp. 3d at 1094–96 (dismissing claim based on Facebook's removal of plaintiff's page brought under Title II of the Civil Rights Act of 1964); *Riggs*, 444 F. App'x at 987 (affirming dismissal of negligence and gross negligence claims based on decisions to delete plaintiff's user profiles); *see also Chicago Lawyers' Comm. For Civil Rights Under Law, Inc. v. Craigslist, Inc.*, 519 F. 3d 666, 671 (7th Cir. 2008) (Section 230(c)(1) applies to ads).

Plaintiff's claims are similar to those that this court in *Lancaster v. Alphabet Inc.* held were barred by Section 230(c)(1). 2016 WL 3648608, at *3-5. In *Lancaster*, the plaintiff claimed that YouTube violated the implied covenant of good faith and fair dealing when it removed some of her videos from its platform. *Id.* at *1. With regard to the third requirement of Section 230(c)(1), the court concluded that YouTube's decision to remove content was an activity that publishers do, and that imposing liability on YouTube for this conduct would necessarily require treating it as a publisher. *Id.* The Court held that, under Section 230(c)(1), "Plaintiff cannot assert a claim based on Defendants' removal of her videos." *Id.* at *3.

Here, Plaintiff similarly claims that Facebook violated the implied covenant of good faith and fair dealing when it 1) ceasing to circulate her ad and 2) "locking" her out of her account and thus preventing her from publishing further content.  Compl. at 1; *id.* at 3, ¶¶ 12, 14; *id.* at 4, ¶ 19.  In making these assertions, she is challenging decisions that Facebook allegedly made about what content to host on its platform, and how and when to allow users to post such content, which are traditional publisher function.  Thus, as in *Lancaster*, Plaintiff's claim requires the Court to treat Facebook as a publisher, and the third and final requirement for Section 230(c)(1) immunity is met. *See Lancaster*, 2016 WL 3648608, at *2-3, 5; *see also Sikhs for Justice*, 144 F. Supp. 3d at 1094–96; *Riggs*, 444 F. App'x at 987.

Because all three requirements are met, Plaintiff's claim is barred under Section 230(c)(1) of the CDA.

### B.     Plaintiff Fails To Adequately Allege A Claim.

Even if Plaintiff could overcome Facebook's CDA 230(c)(1) immunity (which she does not and cannot), her Complaint should be dismissed for a second, independent reason, which is that the Complaint fails to adequately allege any claim against Facebook.

In order to assert breach of the implied covenant of good faith and fair dealing, Plaintiff must allege: (1) the existence of a contract; (2) that plaintiff fulfilled her obligations under the contract; (3) that the conditions required for defendant's performance had occurred; (4) that defendant unfairly interfered with plaintiff's right to receive the benefits of the contract; and (5) that plaintiff was harmed as a result of defendant's conduct.  *Herskowitz v. Apple, Inc.*, 940 F. Supp. 2d 1131, 1143 (N.D. Cal. 2013).

The "implied covenant of good faith is read into contracts in order to protect the express covenants or promises in the contract, not to protect some general public policy interest not directly tied to the contract's purpose."  *Schulken v. Wash. Mut. Bank*, 2009 WL 4173525, at *6 (N.D. Cal. Nov. 19, 2009).  "[A] party must take on an obligation, either expressly or impliedly, before it can be said to have acted in bad faith by not carrying it out."  *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011).

"To state a claim for breach of the implied covenant, a plaintiff must show 'that the

conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities.'" *Id.* (quoting *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990)). This means that the implied covenant "***will not apply where no express term exists on which to hinge an implied duty***, and where there has been compliance with the contract's express terms." *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 770 (N.D. Cal. 2010) (quoting *Berger v. Home Depot U.S.A., Inc.*, 476 F. Supp. 2d 1174, 1177 (C.D. Cal. 2007)) (emphasis added); *accord Young*, 790 F. Supp. 2d at 1117 (granting motion to dismiss for failure to meet this standard).

Plaintiff claims that Facebook violated its implied duty of good faith and fair dealing to her in two ways: 1) by ceasing to circulate her boosted Facebook ad (Compl. at 1 & 4, ¶ 19); and 2) by "locking" her out of her account after she "attempted unsuccessfully to secure" it (Compl. at 1 & 3, ¶¶ 12, 14;). Plaintiff fails to plead facts on which the Court could conclude that either of these alleged actions constituted a breach of any express or implied obligation.

*First*, Plaintiff does not identify any language in Facebook's terms that could create an implied duty for Facebook to continue circulating her ads. In fact, Plaintiff does not cite any contractual language whatsoever relating to ad circulation. As a result, there is no basis for finding any breach of an implied duty of good faith and fair dealing.

This Court dismissed a similar implied covenant of good faith and fair dealing claim for this reason in *Young v. Facebook*. In that case, the plaintiff alleged that Facebook violated the covenant of good faith and fair dealing by not showing concern or offering assistance when its computer system flagged plaintiff's account, but the plaintiff failed to "point to any express or implied obligation requiring Facebook to show such concern or offer such assistance," and the claim failed for that reason. *Young*, 790 F. Supp. 2d at 1118.

Nor does Plaintiff allege that she complied with all of the requirements necessary for continued circulation of her ads. Indeed, Plaintiff's only allegation relating to why the ads purportedly stopped running is her assertion that Facebook was trying to "censor[]" the content of her ad (*e.g.*, Compl. at 1), but that assertion is contradicted by the documents that she attaches to

her Complaint showing that Facebook approved her ad many times.[2]

*Second*, with respect to her claim that she was "locked" out of her Facebook account, Plaintiff similarly fails to identify any contractual provisions establishing that such conduct could constitute a breach of the covenant of good faith and fair dealing. Plaintiff cites two purported contractual provisions, but neither supports her claim. *See Young*, 790 F. Supp. 2d at 1118 (finding allegation insufficient because it was contradicted by email attached by plaintiff to the complaint).

Plaintiff cites a statement in Facebook's Statement of Principles that users "should not have their presence on the Facebook Service removed for reasons other than those described in Facebook's terms of service." Compl. at 4, ¶ 22. Plaintiff does not allege that Facebook's Statement of Principles (which is separate from its Terms of Service) is a contract that she entered into with Facebook; but even if the language quoted by Plaintiff constituted a contractual commitment, it says nothing about the alleged conduct in this case. Plaintiff does not allege that Facebook has "removed" or terminated her from Facebook. Rather, what she alleges—and what the documents attached to her Complaint illustrate—is that she was locked out of her account after she reposted her ad numerous times and then "attempted unsuccessfully to secure [her] account." Compl. at 2 ¶ 9 & 3, ¶¶ 12, 14.[3] Indeed, Plaintiff quotes an email that she received from Facebook support indicating that the purported lock-out was put in effect "[f]or [her] protection," because it appeared "like someone may have accessed [her] Facebook account," and, furthermore, that she could unlock the account by "answer[ing] a few questions" and changing her password. *Id.* at 2 ¶ 11. Nothing in the cited language suggests that Facebook has an express

---

[2] *See* Compl. Exh. 1 (email approving ad on January 13, 2019, at 12:19 a.m.); Exh. 2 (email approving ad on January 13, 2019, at 1:05 p.m.); Exh. 3 (email approving ad on January 13, 2019, at 11:05 p.m.); Exh. 4 (email approving ad on January 14, 2019, at 1:19 a.m.); Exh. 5 (email approving ad on January 15, 2019, at 8:33 p.m.); Exh. 6 (email approving ad on January 16, 2019, at 12:01 a.m.); Exh. 7 (email approving ad on January 17, 2019, at 3:44 p.m.); Exh. 8 (email approving ad on January 17, 2019, at 1:05 a.m.); *accord* Compl. at 5, ¶ 33 ("Plaintiff's boosted ads were approved by Facebook.").

[3] *See also* Compl. Exh. 3 (email from Facebook Security to Sandra O'Hara Harmon on January 17, 2019, at 8:53 p.m. noting that someone may have accessed Plaintiff's account and that for security, Plaintiff would need to answer a few questions and change her password the next time she logged on).

or implied obligation not to temporarily lock a user's account in this manner.

Similarly, Plaintiff cites a clause from Facebook's terms providing that, "[i]f we determine that you have violated our terms or policies, we may take action against your account . . . including by suspending access to your account or disabling it," and she argues that this clause creates an implied duty barring "capricious terminations." Compl. at 5, ¶ 2 & 6, ¶ 3. But again, Plaintiff does not allege that her account has been terminated or suspended for violations of Facebook's terms or policies. Rather, as discussed above, her allegations and the documents she attaches show that she was temporarily locked out because of a technical security issue, and nothing in the clause she quotes from Facebook's terms—or any other provision of the terms—bars that.

The Court in *Young* found that this sort of pleading deficiency was also fatal to a similar good faith and fair dealing claim. In that case, the plaintiff alleged (in addition to the assistance-related claim discussed above) that Facebook violated the covenant of good faith and fair dealing by arbitrarily terminating her account. The Court noted that "it is at least conceivable that arbitrary or bad faith termination of user accounts . . . could implicate the implied covenant of good faith and fair dealings;" but the Court found that the plaintiff had failed to plead a factual basis for such a claim. *Young*, 790 F. Supp. 2d at 1118. Specifically, the Court found that there was no basis in the Complaint to find that Facebook had terminated the plaintiff's account arbitrarily or in bad faith; to the contrary, the plaintiff had attached an email to the complaint stating that plaintiff's account would be permanently disabled if she continued to send friend accounts to people she did not know or committed further violations of Facebook's statement of Rights and Responsibilities. *Id.*

In sum, Plaintiff does not allege any facts on which the Court could conclude that the two actions she complains of—allegedly "locking" her out of her account and ceasing to circulate her ad—were violations of any express or implied obligation that Facebook had. Plaintiff's claim fails for this second, independent reason as well.

//

//

**V.    CONCLUSION**

For the foregoing reasons, Facebook respectfully requests that Plaintiff's Complaint be dismissed.

Dated: April 1, 2019                                       KEKER, VAN NEST & PETERS LLP

                                                By:   */s/ Kristin E. Hucek*
                                                      MATAN SHACHAM
                                                      KRISTIN E. HUCEK

                                                      Attorneys for Defendant
                                                      FACEBOOK, INC.