KEKER, VAN NEST & PETERS LLP
MATAN SHACHAM - # 262348
mshacham@keker.com
KRISTIN E. HUCEK - # 321853
khucek@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
FACEBOOK, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SANDRA O'HARA-HARMON,<br><br>                Plaintiff,<br><br>       v.<br><br>FACEBOOK, INC.,<br><br>                Defendant. | Case No. 3:19-cv-00601-WHA<br><br>**DEFENDANT FACEBOOK, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Date:   May 9, 2019<br>Time:   8:00 a.m.<br>Dept.:  Courtroom 12, 19th Floor<br><br>Judge: Honorable William Alsup<br><br>Date Filed:  February 4, 2019<br><br>Trial Date:  Not Set |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT ........................................................................................................................2

    A. Section 230(c)(1) of the CDA Bars Plaintiff's Complaint in its Entirety. ...............2

        1. Each element of the Section 230(c)(1) defense is satisfied. ........................2

            a. Plaintiff does not contest that Facebook is an interactive service provider. ..................................................................2

            b. Plaintiff does not contest that the content at issue was provided by someone other than Facebook. ...................2

            c. Plaintiff offers no law or fact to rebut the conclusion that her claims seek to hold Facebook liable for exercise of a publisher's traditional editorial functions. ........................2

        2. The content at issue need not be "offensive or offending" for Section 230(c)(1) immunity to apply. ............................................................3

    B. Plaintiff Fails to Adequately Allege Any Claim. ......................................................4

        1. Plaintiff fails to adequately allege a claim for breach of the implied covenant of good faith and fair dealing. .......................................................4

            a. Plaintiff's allegations about being locked out of her account are insufficient to support a claim. ....................................5

            b. Plaintiff's allegations regarding her ad are insufficient to support a claim. ..................................................................6

        2. Plaintiff fails to allege a claim of extortion against Facebook. ....................7

    C. Leave to amend should be denied. ............................................................................8

III. CONCLUSION ....................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................................. 8

*Barnes v. Yahoo!, Inc.*,
    570 F.3d 1096 (9th Cir. 2009) .................................................................................................. 4

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................. 8

*Caraccioli v. Facebook, Inc.*,
    167 F. Supp. 3d 1056 (N.D. Cal. 2016) .................................................................................... 9

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) .................................................................................................. 2

*Coto Settlement v. Eisenberg*,
    593 F.3d 1031 (9th Cir. 2010) .................................................................................................. 8

*In re Facebook PPC Advert. Litig.*,
    709 F. Supp. 2d 762 (N.D. Cal. 2010) ...................................................................................... 4

*Foman v. Davis*,
    371 U.S. 178 (1962) ................................................................................................................. 9

*Lancaster v. Alphabet Inc.*,
    2016 WL 3648608 (N.D. Cal. July 8, 2016) ......................................................................... 1, 3

*Leadsinger, Inc. v. BMG Music Publ'g*,
    512 F.3d 522 (9th Cir. 2008) .................................................................................................... 8

*Riggs v. MySpace, Inc.*,
    444 F. App'x 986 (9th Cir. 2011) .......................................................................................... 1, 3

*Saul v. U.S.*,
    928 F.2d 829 (9th Cir. 1991) .................................................................................................... 9

*Sikhs for Justice, Inc. v. Facebook, Inc.*,
    144 F. Supp. 3d 1088 (N.D. Cal. 2015) ............................................................................ 1, 3, 9

*Sprewell v. Golden State Warriors*,
    275 F.3d 1187 (9th Cir. 2001) .................................................................................................. 8

*Young v. Facebook, Inc.*,
    5:10-cv-03579, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ......................................... 1, 4, 6

*Young v. Facebook, Inc.*,
    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ..................................................................................6

*Zeran v. Am. Online, Inc.*,
    129 F.3d 327 (4th Cir. 1997) ..............................................................................................2, 3

**State Cases**

*Perez v. Van Groningen & Sons, Inc.*,
    719 P.2d 676 (Cal. 1986) .........................................................................................................7

**Federal Statutes**

47 U.S.C.§ 230................................................................................................................*passim*

**State Statutes**

Cal. Penal Code § 518..............................................................................................................8

**I.   INTRODUCTION**

Plaintiff's opposition to Facebook's motion to dismiss is largely a repetition of the assertions in her Complaint and fails to effectively rebut the two principal reasons why this lawsuit should be dismissed.

*First*, Plaintiff's claims are barred by Section 230(c)(1) of the Communications Decency Act ("CDA").  Plaintiff asserts that it is "false" and "misleading" for Facebook to argue that Section 230(c)(1)'s requirements are met, without offering any reasons as to why this is so.  She does not cite any law or facts in support of her argument that Section 230(c)(1) immunity is inapplicable here.  Instead, she attempts to distinguish cases cited by Facebook by relying on language from Section 230(c)**(2)** of the CDA, which is a separate provision that is not at issue in this motion.  Courts, including those in this District, routinely dismiss claims such as the ones in this case, where a user seeks to hold a company like Facebook liable for decisions about what or who it hosts on its platform.  *See, e.g.*, *Riggs v. MySpace, Inc.*, 444 F. App'x 986, 987 (9th Cir. 2011); *Lancaster v. Alphabet Inc.*, 2016 WL 3648608, at * 2-3 (N.D. Cal. July 8, 2016); *Sikhs for Justice "SFJ", Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1095 (N.D. Cal. 2015*).*  Plaintiff offers no legal or factual reason why this Court should not do the same here.

*Second*, even if Plaintiff could overcome Facebook's Section 230(c)(1) immunity, the Complaint should be dismissed because Plaintiff fails to adequately plead any claim.  In her opposition, Plaintiff does not identify any well-pled allegations or any law to address these pleading defects.  Instead Plaintiff repeats the conclusory allegations from her Complaint.  Plaintiff also quotes dicta from *Young v. Facebook, Inc.*, 5:10-cv-03579, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010); but in that case the Court in fact ***dismissed*** the claim of breach of implied covenant of good faith and fair dealing at the pleading stage, despite pleadings which arguably presented stronger factual allegations than Plaintiff's own here.

Plaintiff's opposition also does not provide any argument for how she could amend her Complaint to overcome either Facebook's Section 230(c)(1) immunity or her failure to state a claim.

For the reasons set forth below and in Facebook's opening brief, the Court should dismiss the Complaint without leave to amend.

## II.    ARGUMENT

### A.    Section 230(c)(1) of the CDA Bars Plaintiff's Complaint in its Entirety.

#### 1.    Each element of the Section 230(c)(1) defense is satisfied.

##### a.    Plaintiff does not contest that Facebook is an interactive service provider.

Plaintiff does not dispute that Facebook is an interactive computer service provider. *See* Opp. at ¶¶ 1-17.  Accordingly, the first requirement for Section 230(c)(1) immunity is satisfied.

##### b.    Plaintiff does not contest that the content at issue was provided by someone other than Facebook.

Plaintiff also does not dispute that Facebook has satisfied the second requirement for Section 230(c)(1) immunity, which is that the content at issue must come from someone other than Facebook.  *See, e.g.*, *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1125 (9th Cir. 2003) (Section 230(c)(1) "precludes treatment as a publisher or speaker for 'any information provided by another information content provider.'" (quoting 47 U.S.C. § 230(c)(1)).  In her opposition, as in her complaint, Plaintiff does not assert that Facebook had any role in creating the content in her ads or any other content.  Because Plaintiff, and not Facebook, created the content at issue, this second requirement is met.

##### c.    Plaintiff offers no law or fact to rebut the conclusion that her claims seek to hold Facebook liable for exercise of a publisher's traditional editorial functions.

The third requirement for Section 230(c)(1) immunity is that the claims seek to hold Facebook liable "for its exercise of a publisher's traditional editorial functions—such as deciding whether to publish, withdraw, postpone or alter content." *Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997).

Plaintiff argues in conclusory fashion that "nowhere in [the] complaint does Plaintiff treat Facebook as the 'publisher' of any content."  Opp. at ¶ 9.  But Plaintiff does not dispute that, through her claims, she is seeking to challenge decisions that Facebook allegedly made about what content to host on its platform and how and when to allow users to post such content.  *See*

Compl. at 1; *id.* at 3, ¶¶ 12, 14; *id.* at 4, ¶ 19. And, in her opposition, she reiterates that she is challenging the decisions that Facebook made in allegedly "preventing the circulation of [her] [] ad." Opp. at ¶ 50.

Plaintiff also does not address any of the cases cited by Facebook holding that such allegations implicate Facebook's exercise of "traditional editorial functions" and thus satisfy the last requirement of Section 230(c)(1) immunity. A decision whether or not to "publish, withdraw, postpone or alter content" falls within "a publisher's traditional editorial functions" and is immunized under Section 230(c)(1). *See Zeran*, 129 F.3d at 330. Courts have thus repeatedly held that allegations similar to the ones here necessarily require treating the defendant as a "publisher." *See, e.g.*, *Lancaster*, 2016 WL 3648608, at * 2-3, 5 (concluding that plaintiff's claim that YouTube violated the implied covenant of good faith and fair dealing when removing some of her videos from its platform was a traditional activity of a publisher and thus warranted dismissal under Section 230(c)(1)); *Sikhs for Justice*, 144 F. Supp. 3d at 1094-96 (concluding that a claim based on Facebook's blocking of plaintiff's page was "publisher" conduct immunized by the CDA); *Riggs*, 444 F. App'x at 987 (affirming dismissal of claims arising from social networking website's decisions to delete plaintiff's user profiles).

Thus, Plaintiff's claim seeks to treat Facebook as a "publisher" in that it seeks to hold Facebook liable for exercise of "a publisher's traditional editorial functions," and the third and final requirement for Section 230(c)(1) is therefore satisfied.

**2.     The content at issue need not be "offensive or offending" for Section 230(c)(1) immunity to apply.**

Plaintiff asserts that Section 230(c)(1) immunity does not apply here because the ads she alleges Facebook did not circulate were "not offensive nor offending." Opp. at ¶ 8. This argument fails because it is not a requirement to qualify for Section 230(c)(1) immunity that the content at issue be offensive in any way.

As discussed above, in order to qualify for Section 230(c)(1) immunity, Facebook need only prove that: (1) it is a provider of an interactive computer service, (2) the content was provided by another information content provider, and (3) Plaintiff's claims treat Facebook as the

"publisher" of that content. 47 U.S.C. § 230(c)(1). By its plain language, Section 230(c)(1) contains no requirement that the content at issue be offensive or offending. 47 U.S.C. § 230(c)(1); *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1105 (9th Cir. 2009) (noting that while section 230(c)(1) shields "all publication decisions" from liability for content generated by third parties, subsection 230(c)(2) provides an additional shield for *any* provider of an interactive computer service only for action taken to restrict access to material the provider considers to be obscene or otherwise objectionable).

Plaintiff's assertion that the contents of her ad were "not offensive nor offending" is irrelevant to the determination of whether Section 230(c)(1) immunity applies to her claims here. And, as discussed in section I.A.1 *supra*, all three elements of Section 230(c)(1) are satisfied and bar Plaintiff's claims.

### B.  Plaintiff Fails to Adequately Allege Any Claim.

Even if Plaintiff could overcome Facebook's CDA Section 230(c)(1) immunity, the Court should dismiss her Complaint for a second, independent reason, which is that she has not adequately alleged any claim against Facebook.

#### 1.  Plaintiff fails to adequately allege a claim for breach of the implied covenant of good faith and fair dealing.

Plaintiff argues that Facebook breached the implied covenant of good faith and fair dealing in two ways: 1) by locking her out of her account after she attempted unsuccessfully to secure it; and 2) by ceasing to circulate her Facebook ad. But Plaintiff fails to identify well-pled allegations sufficient to support a claim that either of these alleged actions constituted a breach of the implied covenant. Specifically, Plaintiff does not identify any contractual language that could give rise to an implied duty barring either of these actions, as required to adequately plead such a claim. *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 770 (N.D. Cal. 2010) (in order to adequately allege a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must point to an express term upon which "to hinge an implied duty"); *see also Young*, 2010 WL 4269304, at *4 (noting that "a party must take on an obligation, either expressly or impliedly, before it can be said to have acted in bad faith by not carrying it out").

        **a.     Plaintiff's allegations about being locked out of her account are insufficient to support a claim.**

Plaintiff's opposition identifies the following contractual language from Facebook's Terms of Service as the language upon which she seeks to base her claim that Facebook violated the implied covenant by locking her out of her account:

> "If [Facebook] determine[s] that you have violated our terms or policies, we may take action against your account to protect our community and services, including by suspending access to your account or disabling it" and that Facebook "may also suspend or disable your account if you create risk or legal exposure for us." *See* Opp. at ¶ 23.

Plaintiff argues that this language creates an implied duty for Facebook not "to terminate an account for any reason" or "without notice." Opp. at ¶¶ 24-26.

Plaintiff's argument fails for a fundamental reason, which is made clear in her opposition: even if this language somehow could give rise to an implied duty not "to terminate an account for any reason" or "without notice" (which Facebook disputes but the Court need not decide), such a duty could not be the basis for Plaintiff's claim because Plaintiff's account was *never terminated*. Rather, as Plaintiff now admits, she was only temporarily locked out after she failed to secure her account, and she has since regained access to her account. *See* Opp. at ¶ 24.

Moreover, the contractual term that Plaintiff relies on relates to an entirely different situation than the one at issue here. The term applies to situations in which Facebook determines that a user "ha[s] violated our terms or policies" and it provides that in such circumstances Facebook may "suspend or disable access to" an account. It does not relate to a situation where, as alleged here, Facebook determines that there is a security or technical issue and asks the user to secure the account, and then the user is temporarily locked out because she is unable to successfully secure the account. *See* Compl. at 2, ¶ 11 (Plaintiff received an email from Facebook stating: "It looks like someone may have accessed your Facebook account. To secure your account, you'll need to answer a few questions and change your password the next time you go to Facebook. For your protection, no one can see you on Facebook until you secure your account."); Compl. at 3, ¶ 12 ("After receiving this email, I attempted unsuccessfully to secure my account . . . ."). Plaintiff does not identify any language that relates to such a situation, much less that bars Facebook from taking the action it allegedly took.

For this reason, also, Plaintiff's reliance on dicta from this Court's decision in *Young v. Facebook, Inc.*—in which the Court stated the possibility that it was "at least conceivable that arbitrary or bad faith termination of user accounts, or even termination of user accounts with no explanation at all, could implicate the implied covenant of good faith and fair dealing"—is inapposite. 2010 WL 4269304, at*4-5. Unlike in *Young*, Plaintiff's account was never terminated, arbitrarily or otherwise—so even if such an arbitrary termination claim could exist in theory, it has no application here.

Moreover, the Court in *Young* concluded that Plaintiff failed to allege such a theoretical claim, *id.* at *4-5, and, in a later decision, it dismissed the claim with prejudice after the plaintiff tried and failed a second time to allege such a claim, *see Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1113 (N.D. Cal. 2011). And, if anything, the pleadings that the Court rejected in *Young* were stronger than the ones at issue here: in *Young*, the Plaintiff alleged that she received numerous emails stating that her account was to be permanently disabled, or terminated because her conduct violated Terms of Service. *See Young*, 2010 WL 4269304, at *1-2. Here, in contrast, the emails that Plaintiff alleges she received from Facebook never stated that her account had been or was going to be suspended or disabled for any reason: rather, they indicated that her account was being hidden for her protection because it appeared that someone was trying to access her account, and that all that was necessary for Plaintiff's account to be secured and visible again was for her to "answer a few questions and change [her] password." Pl. Exh. 3, ECF 1-4.

Thus, the contractual term that Plaintiff relies on does not create any express or implied duty barring Facebook from engaging in the conduct that Plaintiff complains of here—*i.e.*, temporarily locking her out of her account for technical or security reasons.

      **b.**  **Plaintiff's allegations regarding her ad are insufficient to support a claim.**

As for her claim that Facebook breached the implied covenant by ceasing to circulate her ad, Plaintiff does not identify—in her Complaint or in her opposition—any language upon which such a duty could hinge. Plaintiff argues that her ads were governed by Facebook's Commercial Terms, but she does not identify any language from those Commercial Terms that could give rise to her claim. *See* Opp. at ¶¶ 31-32.

6

Plaintiff also appears to argue that the automated approval emails sent to her by Facebook created the contract upon which her claim is based because they stated that "the ad will begin circulating." *See* Opp. at ¶ 33.  But, as Plaintiff admits repeatedly in her Complaint, those emails do not state that the ad "will" begin circulating; rather, they state that the ad "*should* begin delivering shortly." *See, e.g.*, Compl. at 2; Pl. Exh. 1, ECF 1-2; Pl. Exh. 2, ECF 1-3.  Plaintiff does not allege anything in her Complaint that would support the conclusion that these automated emails were additional contracts entered into between Plaintiff and Facebook, much less contracts that obligated Facebook to circulate Plaintiff's ad.[1]

### 2. Plaintiff fails to allege a claim of extortion against Facebook.

Plaintiff argues for the first time in her opposition that she seeks to bring against Facebook a claim for extortion through the doctrine of *respondeat superior* based on statements allegedly made by an individual named Gulberg Hendrick, whom Plaintiff believed to be from Facebook's technical support headquarters and who allegedly asked Plaintiff to purchase and provide him with the code from a $100 Google Play gift card prior to unlocking her account.  *See* Opp. at ¶¶ 28, 50.  Such a claim fails for at least three reasons.

*First*, Plaintiff fails to allege the elements necessary to satisfy the doctrine of *respondeat superior*.  In order to make out a claim against Facebook for the actions allegedly taken by an employee through the doctrine of *respondeat superior*, Plaintiff must allege that the employee was acting within the scope of his or her employment—as Plaintiff herself acknowledges.  *Perez v. Van Groningen & Sons, Inc.*, 719 P.2d 676, 678 (Cal. 1986); *see also* Opp. at ¶ 15.  Nowhere in her complaint, however, does she allege that Mr. Hendrick was acting within the scope of his alleged employment with Facebook when he allegedly attempted to obtain $100 from her in order

---

[1] Similarly, Plaintiff's allegations regarding "sarcastic" comments made by a non-employee of Facebook, Babulal Sarkar, are insufficient to state a claim for breach of an implied covenant of good faith and fair dealing.  Plaintiff concludes that the comments in Mr. Sarkar's email were "sarcastic" without anything in the plain language of the email to support this conclusion, *see* Pl. Exh. 5, ECF 1-6, and the further conclusion that Mr. Sarkar was therefore personally responsible for blocking Plaintiff's access to her Facebook accounts and stopping the circulation of her ads requires too large of a logical leap for Rule 8's purposes.  There is also no basis to conclude that Mr. Sarkar was even a Facebook employee, given that all email communications from him came from a Yahoo email address, whereas all Facebook communications to Plaintiff came from @facebookmail.com and @support.facebook.com email addresses.  *Compare* Pl. Exh. 5, ECF 1-6, at 1 *with* Pl. Exhs. 1 to 5, ECF 1-2 to 1-6.

to unlock her Facebook account—nor could she do so.

*Second*, Plaintiff's bald assertion that Mr. Hendrick was actually a Facebook employee is unsupported by any factual allegations in the Complaint. Such a "naked assertion," without more, is insufficient at the pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (concluding that "'naked assertion[s]' devoid of 'further factual enhancement'" are insufficient) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Moreover, her deduction that Mr. Gulberg was a Facebook employee who was extorting her for $100 in order to unlock her account and not an opportunistic fraudster seeking to ensnare Plaintiff in a well-known online tech-support scam[2] is unreasonable. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1034 (9th Cir. 2010) (citing *Twombly*, 550 U.S. at 570) (noting that in order to survive a motion to dismiss, plaintiff must allege facts sufficient to state a claim that is "plausible on its face"); *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988, *opinion amended on other grounds on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001) (noting that the court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

*Third*, even if Plaintiff had adequately alleged that Mr. Hendrick was a Facebook employee acting within the ordinary scope of his employment, Plaintiff fails to allege that his conduct constituted extortion. Under California law, extortion is defined as "the obtaining of property . . . from another, with his [ ] consent . . . induced by a wrongful use of force or fear." Cal. Penal Code § 518. Plaintiff does not allege that Mr. Hendrick induced her to buy the gift card through use of force or fear.

    **C.**    **Leave to amend should be denied.**

The Court should dismiss Plaintiff's Complaint with prejudice because any attempt by Plaintiff to amend her complaint would be futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (noting that district court has discretion to deny leave to amend complaint due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing

---

[2] *See* Federal Trade Commission, *Scammers increasingly demand payment by gift card*, Oct. 16, 2018, available at: https://www.ftc.gov/news-events/blogs/data-spotlight/2018/10/scammers-increasingly-demand-payment-gift-card.

party by virtue of allowance of the amendment, [and] futility of amendment") (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (internal quotations omitted).  *See also Saul v. U.S.*, 928 F.2d 829, 843 (9th Cir. 1991) (affirming district court's denial of leave to amend complaint on the grounds that any amendment would be futile).

Here, due to the robust immunities afforded under the CDA, no amendment would change the conclusion that Facebook, as an internet service provider, is immune from claims predicated on content provided by others.  *See, e.g.*, *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1067 (N.D. Cal. 2016) ("Because Plaintiff's claims against Facebook are barred as a matter of law by § 230(c), the court finds that allowing for their amendment would be futile."); *Sikhs for Justice*, 144 F. Supp. 3d at 1095-96 (same).

Moreover, Plaintiff has not explained how she could possibly cure by amendment the other deficiencies identified by Facebook in its motion to dismiss.  As a result, Plaintiff's Complaint should be dismissed with prejudice.

### III.  CONCLUSION

For the foregoing reasons, as well as those set forth in Facebook's opening brief, Facebook respectfully requests that the Court grant Facebook's motion to dismiss without leave to amend.

Dated:  April 22, 2019                                              KEKER, VAN NEST & PETERS LLP

By:   */s/ Kristin E. Hucek*
      MATAN SHACHAM
      KRISTIN E. HUCEK

      Attorneys for Defendant
      FACEBOOK, INC.

**PROOF OF SERVICE**

I am employed in the City and County of San Francisco, State of California in the office of a member of the bar of this court at whose direction the following service was made. I am over the age of eighteen years and not a party to the within action. My business address is Keker, Van Nest & Peters LLP, 633 Battery Street, San Francisco, CA 94111-1809.

On April 22, 2019, I served the following document(s):

- **DEFENDANT FACEBOOK, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS**

☑ by regular **UNITED STATES MAIL** by placing Copy in a sealed envelope addressed as shown below. I am readily familiar with the practice of Keker, Van Nest & Peters LLP for collection and processing of correspondence for mailing. According to that practice, items are deposited with the United States Postal Service at San Francisco, California on that same day with postage thereon fully prepaid. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation date or the postage meter date is more than one day after the date of deposit for mailing stated in this affidavit.

☑ by **E-MAIL VIA PDF FILE**, by transmitting on this date via e-mail a true and correct copy scanned into an electronic file in Adobe "pdf" format. The transmission was reported as complete and without error.

Sandra O'Hara-Harmon            Plaintiff Pro Se
815 F Street
Hartsville, SC 29550

Sohara1966@aol.com

Executed on April 22, 2019, at San Francisco, California. I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Alisa Thompson