IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA O'HARA-HARMON,<br><br>    Plaintiff,<br><br>  v.<br><br>FACEBOOK, INC.,<br><br>    Defendant. | No. C 19-cv-00601 WHA<br><br>**ORDER GRANTING MOTION TO DISMISS** |

## INTRODUCTION

*Pro se* plaintiff Sandra O'Hara-Harmon asserts claims against defendant Facebook, Inc. for breach of the implied covenant of good faith and fair dealing and for extortion. Defendant moves to dismiss. To the extent below stated, defendant's motion to dismiss is **GRANTED**.

## STATEMENT

Defendant Facebook, Inc. operates a social network where users create personal profiles, build communities, and share content. Users can post messages to their "friends" and within their "communities." Facebook's "Boost Post" function allows users to create an advertisement out of a post. When boosting a post, a user will inform Facebook who the target audience is for the advertisement, how much money the user would like to spend, and how long the advertisement should run (Dkt. No. 1 at ¶¶ 2, 3).

*Pro se* plaintiff Sandra O'Hara-Harmon maintains a Facebook page for a community named Advocates for Equal Justice. In January 2019, plaintiff attempted to "boost" a post she had made to this community page describing the death of her transgender child and experience at a local North Carolina hospital related to that event. The next day, an email from Facebook

confirmed her advertisement had been approved and would be delivered "shortly" (*id*. at ¶¶ 1, 4, 5).

The advertisement did not immediately circulate. Plaintiff contacted Facebook's support team, who informed her that she should reset her "ad manager" and try re-posting her ad. Despite receiving the aforementioned email on January 13, 2019 at 12:19 AM, plaintiff proceeded to re-post her ad seven more times over the course of the next four days, starting from January 13, 2019, at 1:05 PM. She received the same confirmation email from Facebook each time she re-posted her ad informing her that her advertisement had been approved and would be delivered shortly. Despite the multiple postings, her advertisement did not circulate (*id*. at ¶¶ 6–10).

On the date that plaintiff tried for the seventh time to re-post her advertisement, plaintiff received an email from Facebook. The e-mail notified plaintiff that it appeared as if someone had accessed her Facebook account and that for her protection, her account was going to be hidden from view until she secured her account by answering a few security questions and changed her password. Plaintiff unsuccessfully attempted to verify her identity to Facebook. After each unsuccessful verification attempt, plaintiff received the same email indicating that for security reasons, her account was "locked" and could only be unlocked after she verified her identity and changed her password (*id*. at ¶ 11–14).

Plaintiff complained numerous times via Facebook's "help-support page." In response to her complaints, plaintiff received an email from a man living in Khowai, India, named Babulal Sarkar, who claimed to have been experiencing the same problem as plaintiff and asked for advice on how to solve the problem. Plaintiff located what she concluded was this person's Facebook page and discovered that he listed his work occupation as a "Manager at Facebook." Plaintiff further concluded, therefore, that Mr. Sarkar was being sarcastic in his email to her and had personally "intentionally locked and banned" her from accessing her Facebook account (*id*. at ¶¶ 16–19).

Plaintiff also attempted to address her problem by calling a person named Gulberg Hendrick, whom she believed to be associated with Facebook's technical support headquarters.

2

As alleged in the complaint, the man she spoke with informed plaintiff that she needed to go to Walmart to buy a $100 Google Play card and provide him with the code on the card before he could "unblock" her account (*id*. at ¶¶ 26–27).

Frustrated at every turn to unlock her account, plaintiff subsequently filed this action against Facebook. The complaint alleged four claims: (i) "locking plaintiff out of her Facebook account in bad faith;" (ii) "preventing access to the Facebook community page in bad faith;" (iii) "censoring the advertisement in bad faith;" and that (iv) Facebook's employee Gulberg Hendrick engaged in extortion (*id*. at ¶¶ 1–4). The complaint therefore appeared to allege three separate claims for breach of the implied covenant of good faith and fair dealing and one claim for extortion.

After the case management conference had been scheduled, plaintiff moved to appear by telephone and have the action transferred to a magistrate judge for adjudication (Dkt. No. 18). Facebook had already declined to proceed before a magistrate judge (Dkt. No. 11). Both motions were denied (Dkt. No. 21).

Facebook now moves to dismiss the complaint (Dkt. No. 19). The motion has been fully briefed (Dkt. Nos. 23, 26). Plaintiff, however, has subsequently moved "for an appointment of a local lawyer" and also for leave to appear at the United States District Court for the District of South Carolina for all hearings in this action (Dkt. Nos. 24, 25). These motions can be decided on the papers. This order follows.

**ANALYSIS**

Under California law, "there is implied in every contract a covenant by each party not to do anything which will deprive the other parties thereto of the benefits of the contract." *Harm v. Frasher*, 181 Cal. App.2d 405, 417 (1960) (citations omitted). To state a claim for breach of the implied covenant, a plaintiff must show "that the conduct of the defendant, whether or not it also constitutes a breach of a consensual contract term, demonstrates a failure or refusal to discharge contractual responsibilities . . . depriving [the other] party of the benefits of the agreement." *Careau & Co. v. Security Pacific Business Credit, Inc.*, 222 Cal. App.3d 1371, 1395 (1990). In

3

other words, here, Facebook needed to have taken on an obligation, either expressly or impliedly, before it can be said to have acted in bad faith by not carrying out that obligation.

The complaint does not articulate any obligation as to which Facebook did not deliver. The only contractual provisions isolated by the complaint were terms which applied when a user "violated our terms or policies." Specifically, that "Facebook expressly reserves the right to terminate the accounts of users who violate Facebook terms of service; Rights & Responsibilities" (Dkt. No. 1 at ¶ 21) and that ". . . [i]f [Facebook] determine[s] that you have violated our terms or policies, we may take action against your account to protect our community and services, including by suspending access to your account or disabling it . . . ." (Dkt. No. 1 at 5–6, ¶ 2).

Yet, the complaint supports that plaintiff had been locked out of her accounts due to concern that a third party had gained access to those accounts. Specifically, Facebook sent an e-mail, quoted in the complaint, which stated: "[i]t looks like someone may have accessed your Facebook account. To secure your account, you'll need to answer a few questions and change your password the next time you go to Facebook. For your protection, no one can see you on Facebook until you secure your account" (Dkt. No. 1 at ¶ 11). The terms isolated by the complaint, pertaining to users who violate Facebook's terms of service, therefore do not appear to govern this action.

As to the claim that Facebook censored plaintiff's advertisement, of course, it would be concerning if plaintiff paid to boost a post and that post had never been boosted — particularly if plaintiff then received no refund or compensation for what she had paid for. Still, plaintiff needs to isolate any specific contractual obligation Facebook impliedly violated.

As to plaintiff's claim that Mr. Hendrick, as a Facebook employee, extorted her, this claim is also insufficiently plausible. *First*, plaintiff needs to show additional facts that support Mr. Hendrick was employed by Facebook and that he acted within the scope of his employment with Facebook. *See Perez v. Van Groningen & Sons, Inc.*, 41 Cal.3d 962, 967 (1986). *Second*, plaintiff needs to show additional facts that support that Mr. Hendrick induced plaintiff to buy the gift card through force or fear, elements required for extortion. *See* Cal. Penal Code § 518.

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Justice is so required here, and so, *pro se* plaintiff is permitted the opportunity to fix the deficiencies identified in the complaint.

Facebook urges this complaint be barred under Section 230 of the Communications Decency Act. Not enough facts, however, have been alleged to warrant such a conclusion. Section 230 "immunizes providers of interactive computer services against liability arising from content created by third parties." *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc). The third element of § 230(c) requires dismissal of plaintiff's claims if "the complaint seeks to hold Facebook as the 'publisher or speaker' of that information." 27 U.S.C. § 230(c)(1). For this third element, "courts must ask whether the duty that the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a 'publisher or speaker.' " *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1102 (9th Cir. 2009).

It is impossible to ascertain from the complaint whether the duty Facebook violated derived from Facebook's status or conduct as a publisher or speaker. As indicated above, however, Facebook would likely not be immunized from a claim alleging it charged and collected money to publish advertising that it then did not publish. More facts are required to make this determination. As such, it remains to be seen whether this action should be barred under Section 230 immunity.

**CONCLUSION**

Based on the foregoing, Facebook's motion to dismiss is **GRANTED**. Plaintiff may move for leave to amend by **MAY 31** at **NOON**. Any motion should explain how the proposed complaint overcomes all deficiencies. Plaintiff should further consider all deficiencies highlighted by defendant's motion to dismiss. This order highlights certain deficiencies in the initial complaint, but it will not necessarily be enough to add a sentence parroting each missing item identified herein. If plaintiff so moves, she should be sure to plead her best case.

The hearing set for May 9 is hereby **VACATED**. Plaintiff's motions to appoint counsel and for leave to appear at the United States District Court for the District of South Carolina are

both **DENIED**. Plaintiff, or plaintiff's counsel (should she elect to retain one), must appear in person at hearings at the courthouse in San Francisco. In addition, this is a civil action and so the Court does not appoint counsel like in criminal prosecutions. If plaintiff wants to proceed with an attorney, she should retain one.

Plaintiff, who is proceeding *pro se*, is advised that helpful information is available online at http://cand.uscourts.gov/proselitigants and also at the legal help center. The legal help center may be reached by calling 415-782-9000, extension 8657.

**IT IS SO ORDERED.**

Dated: May 5, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE